UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FERNANDO PICHARDO MEDINA, *an adult*, <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLA, *Seattle Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operation*, KRISTI NOEM, *Secretary of Homeland Security*, PAMELA BONDI, *Attorney General*, TODD LYONS, *Acting Director of Immigration and Customs Enforcement*, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *and* U.S. DEPARTMENT OF JUSTICE, <br><br> Respondents. | Case No. 3:25-cv-02233-MC <br><br> OPINION & ORDER |

MCSHANE, Judge:

On December 3, 2025, Petitioner Fernando Pichardo Medina filed a Petition for Writ of Habeas Corpus, ECF No. 1, accompanied by a Motion for Temporary Restraining Order, ECF No. 2, asking this Court to enjoin Respondents from removing him from the District of Oregon. Petitioner was arrested by Customs and Border Patrol ("CBP") officers of the U.S. Department of Homeland Security ("DHS") outside of his apartment building on December 3, 2025. Petitioner was then detained by Respondent Immigration and Customs Enforcement ("ICE"). On

Page 1 — OPINION & ORDER

that same day, the Court granted Petitioner's Motion for Temporary Restraining Order in substantial part. ECF No. 6.

The Court held a hearing on the Petition on December 15, 2025. Mins. of Proc., ECF No. 14. Because Respondents' arrest and continuing detention of Petitioner violated Petitioner's rights under the Due Process Clause of the Fifth Amendment, the Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED. The Court ordered Petitioner released at the Hearing for the reasons explained in this Order.

## BACKGROUND

On December 3, 2025, "Alpha Team 1" with U.S. Customs and Border Protection ("CBP") received information regarding a "target" who had a conviction for unlawful possession of methamphetamine and who was previously ordered removed by an Immigration Judge ("IJ") but remained in the United States unlawfully. Gov't Resp. 3, ECF No. 10. The "target package" included a photo of the target dating to 2006 and the target's address, including apartment number, in Beaverton, Oregon. DeSantos Decl. ¶ 10. The target had the initials J.F.V.V. Soraghan Decl. Ex. 2 at 2, ECF No. 11-2; Reply 6, ECF No. 13. The address and apartment number correspond to Petitioner's apartment. *Id.*; ECF No. 13-4 (Petitioner's lease). Petitioner has lived in the apartment since 2014, and lives there now with his wife and one of his children. Reply 6. Despite serving as the basis for Respondents' encounter with Petitioner, the target package was not provided to the Court. To say that the information relied upon by CBP in the target package was stale would be a remarkable understatement.

At around 5:00 a.m. on December 3, 2025, CBP Officers went to the address from the target package, an apartment complex. DeSantos Decl. ¶ 11. At around 7:45 a.m., officers

observed someone come out of the target's apartment.[1] *Id.* ¶ 12. Officers expressed that they were unsure whether the person, who turned out to be Petitioner, was the target. *Id.* Petitioner looked "through the blinds of his apartment window a few times." *Id.* ¶ 13. Petitioner left his apartment again shortly thereafter and went to his van. *Id.*

Officers moved to block Petitioner's van from behind. DeSantos Decl. ¶ 13. As an officer wearing plain clothes under a tactical vest labeled "POLICE" approached Petitioner's stationary van on foot, Petitioner exited the van. *Id.* ¶ 14. The officer followed Petitioner, caught up to him, and initiated an arrest. *Id.* Officers eventually handcuffed Petitioner, patted him down, and obtained Petitioner's ID. *Id.* ¶¶ 14–15. The officers discovered Petitioner was not their target. *Id.* ¶ 15. Officers also discovered Petitioner, a citizen of Mexico, does not have lawful immigration status in the United States.[2] *Id.* Petitioner does not have a criminal record. Reply 24. As asserted in briefing and consistent with Petitioner's sworn testimony at the Hearing, Petitioner has lived in the United States for approximately 21 years, has paid taxes for over a decade, is connected to his community through his church, lives with his family, and has a minor son who is a U.S. citizen.[3] *See id.* at 13, 24–25.

Officers transported Petitioner to the Portland ICE facility for processing. DeSantos Decl. ¶ 15. There, the arresting officers completed paperwork attesting to having arrested Petitioner based on probable cause. *Id.* ¶ 16. Gov't Resp. 6, 18. The arresting officer completed a warrant for Petitioner's arrest. Soraghan Decl. Ex. 3, ECF No. 11-3. ICE prepared a Notice to Appear ("NTA") charging Petitioner as removable. Soraghan Decl. Ex. 1, ECF No. 11-1.

---

[1] The arresting officers asserts it was dark and rainy. DeSantos Decl. ¶ 12. Weather reports submitted by Petitioner suggest it was not raining at the time, it was cloudy, and well past sunrise. ECF No. 13-1; Reply 19–20.

[2] Petitioner testified at the Hearing he has never sought to obtain legal immigration status in the United States.

[3] These are aspects of an individual's profile that ICE considers when making detention determinations. ECF No. 13-3 (DHS-ICE Office of the Inspector General Report on noncitizen "Risk Classification Assessment" process) ("ICE bases a noncitizen's threat to public safety on an assessment of the noncitizen's criminal history, driving-under-the-influence record, pattern of violence, outstanding active warrants, supervision history, and association to any security-threat group(s).").

Respondents filed the NTA with the Immigration Court on December 10, 2025, commencing removal proceedings against Petitioner. *Id.*

## LEGAL STANDARD

To obtain habeas relief, Petitioner must prove that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241. Courts have "broad discretion" in constructing a remedy in habeas cases. *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## DISCUSSION

Respondents justify Petitioner's detention under 8 U.S.C. § 1225(b)(2) or, in the alternative, 8 U.S.C. § 1226(a). Respondents argue Petitioner is subject to mandatory detention under § 1225(b)(2) because he is an "applicant for admission" to the United States. Gov't Resp. 16 (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025)).

### I. The Court Has Jurisdiction

Federal courts have jurisdiction over petitions for habeas corpus filed by persons "in custody in violation of the Constitution or laws or treaties of the United States" pursuant to 28 U.S.C. § 2241(c)(3). "Claims for relief [that] necessarily imply the invalidity of . . . confinement and removal . . . fall within the 'core' of the writ of habeas corpus." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (internal quotations removed).

The Supreme Court has interpreted 8 U.S.C. § 1252(g)'s jurisdiction-stripping provision narrowly, limiting it to only "three discrete actions:" the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) (quoting § 1252(g)). The statute does not cover "the universe of deportation claims," *id.*, and it should not be

interpreted with "uncritical literalism" "to sweep in any claim that can technically be said to 'arise from' the three listed actions." *Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018). The Petition's challenge to Respondents' detention of Petitioner does not challenge any of the three narrow categories of actions identified in § 1252(g) and is thus not barred.

In addition, Respondents argue the Court lacks jurisdiction over the Petition because 8 U.S.C. § 1252(b)(9) explicitly divests district courts of jurisdiction over habeas petitions when the claim arises from an action to remove an alien. Gov't Resp. 7–8. Section 1252(b)(9), titled "[c]onsolidation of questions for judicial review," channels jurisdiction over "any issue—whether legal or factual—arising from any removal-related activity" to the courts of appeal through a petition for review of a final order of removal. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (internal quotation marks omitted) (describing "vise-like [] grip" of jurisdiction-stripping provision). Nevertheless, claims independent of or collateral to the removal process are outside the scope of § 1252(b)(9). *Id.* at 1032 (citing *Torres–Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011)); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("§ 1252(b)(9) is a 'targeted' and 'narrow' provision that 'is certainly not a bar where, as here, the parties are not challenging any removal proceedings.'" (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020))). Petitioner's challenge to the legality of his detention is independent from the removal proceedings against him and is thus not barred by § 1252(b)(9). *Gonzalez*, 975 F.3d at 810 ("[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process.").

## II.     Respondents Have No Authority to Detain Petitioner Under § 1225(b)

The Immigration and Nationality Act ("INA") provides two statutory sections that authorize detention: § 1225 applies to noncitizen applicants "seeking admission into the

country"; and § 1226 governs noncitizens "already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Under § 1225(b)(2), detention is generally mandated for noncitizens who have just crossed the Nation's borders and ports of entry seeking admission. *Id*. at 287. Alternatively, § 1226 provides the default process for discretionary detention of noncitizens *already present* in the country pending removal proceedings. *Id*. at 303. As previously held by this Court and the judges of this District, Respondents cannot legally detain a noncitizen already present in the United States pursuant to § 1225(b)(2). *Guzman v. Weiss*, 6:25-cv-012146-MC, ECF No. 12. Respondents detained Petitioner in Beaverton, Oregon, which is neither at the border nor a port of entry, and Petitioner testified he came to the United States in 2005 at the latest. Soraghan Decl. Ex. 1. Petitioner could not have been "seeking admission" when he was detained. Accordingly, consistent with repeated findings by this Court and others within this District, the Court finds Respondents cannot lawfully detain Petitioner based on § 1225(b)(2). *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (listing dozens of district court orders rejecting same "dubious" interpretation of § 1225(b)).

### III.     Respondents' Arrest and Continued Detention of Petitioner is Unconstitutional

Respondents' arrest and continued detention of Petitioner denied Petitioner due process in violation of the Fifth Amendment. Courts apply the balancing test in *Mathews v. Eldridge* to determine whether a noncitizen's detention violates the Due Process Clause. 424 U.S. 319, 335 (1976); *see E. A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. Aug. 19, 2025) (collecting cases applying *Mathews* to similar immigration detention contexts). Under *Mathews*, a court balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The *Mathews* factors weigh in favor of Petitioner and support his release.

### A. Private Interest of Petitioner

Petitioner was deprived of his liberty when he was arrested on December 3, 2025 and remained detained thereafter. Pet. ¶ 52. "Freedom from imprisonment . . . lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the United States, liberty is the norm and detention "is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Ninth Circuit has confirmed that although liberty interests of noncitizens may be limited in ways those of citizens cannot because of the Government's interest in immigration enforcement, noncitizens retain liberty interests protected by the Fifth Amendment. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–07 (9th Cir. 2022). Petitioner's interest in being free from detention is among the "most elemental" of liberty interests and is unquestionably substantial. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

### B. Risk of an Erroneous Deprivation of Petitioner's Liberty

This Court is becoming all too familiar with Respondents' self-apparent tactic of "arrest first, ask questions later," which is the crux of the violation of Petitioner's Due Process rights here. To deport a noncitizen present in the United States, officials may serve the individual with

a Notice to Appear (NTA), the charging document DHS officials use to initiate removal proceedings before an IJ. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008). A noncitizen served with an NTA can challenge the Government's charges for removability. The Attorney General may issue a warrant to arrest the noncitizen concurrently with the NTA. *See* § 1226(a); *see also* 8 C.F.R. § 236.1(a). Continued civil immigration detention under § 1226(a) is justified only when a noncitizen poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. Absent these conditions, § 1226(a) contemplates parole or conditional release. *See id.* at 683, 690–92. Noncitizens detained under § 1226(a) must receive a bond hearing "at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Generally, the Due Process Clause requires some kind of a hearing before the State deprives a person of liberty or property.").

Outside of this process, an immigration officer's authority to make a warrantless arrest of a noncitizen is limited. 8 U.S.C. § 1357(a); *Arizona v. United States*, 567 U.S. 387, 408 (2012). An immigration officer may only make a warrantless arrest when the officer "has reason to believe" that the individual "is in the United States in violation of [the immigration laws]" and "is likely to escape before a warrant can be obtained for his arrest." *Ramirez Ovando v. Noem*, --- F. Supp. 3d. ---, 2025 WL 3293467, at *2 (D. Colo. Nov. 25, 2025) (citing § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii)). The "reason to believe" language in § 1357 is equivalent to the constitutional requirement of probable cause and must arise from a particularized inquiry. *See Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980); *B.D.A.A. v. Bostock*, 2025 WL 3484912, at *7–8 (D. Or. Dec. 4, 2025) (collecting cases). Immigration officers must have probable cause as to both prongs to effect a warrantless arrest. *B.D.A.A.*, 2025 WL 3484912 at *7.

The risk of erroneous deprivation becomes overwhelmingly high when immigration officers act with unrestrained discretion to detain noncitizens without an individualized showing of why detention is warranted or an effective process for noncitizens to challenge the exercise of such discretion. In contrast, the procedures accompanying § 1226(a), including an individualized determination by an IJ, substantially mitigate the risk of the erroneous deprivation of Petitioner's liberty. *Rodriguez Diaz*, 53 F.4th at 1210 (finding the procedures available through the implementing regulations of § 1226(a) make "the risk of erroneous deprivation . . . relatively small" (citation omitted)).

Here, Respondents denied *themselves* the ability to reduce the risk of an erroneous deprivation of Petitioner's liberty. Respondents followed an inverted process that began by first arresting Petitioner without a warrant, only then issuing an NTA and preparing a warrant for his arrest, and ultimately detaining Petitioner based on the events of their premature arrest. Gov't Resp. 6, 18. Had Respondents taken a different approach, guided by the procedures contemplated under § 1226(a), which require the Government establish Petitioner presents a flight risk or danger to the community to support continued detention, Respondents would have discovered significant factors weighing against Petitioner's detention. Petitioner has lived in the United States for approximately 21 years, has no criminal record, has paid taxes for over a decade, is connected to his community through his church, has a family, and is a unique source of trust and affection for his son, who is a U.S. citizen.[4] *See* Reply 13, 24–25; *B.D.A.A.*, 2025 WL 3484912, at *8. Respondents' sole argument for probable cause that Petitioner poses a risk of flight to justify his arrest is based on a declaration by the arresting officer stating Petitioner attempted to

---

[4] These are aspects of an individual's profile that ICE considers when making detention determinations. ECF No. 13-3 (DHS-ICE Office of the Inspector General Report on noncitizen "Risk Classification Assessment" process) ("ICE bases a noncitizen's threat to public safety on an assessment of the noncitizen's criminal history, driving-under-the-influence record, pattern of violence, outstanding active warrants, supervision history, and association to any security-threat group(s).").

flee.[5] DeSantos Decl. ¶¶ 14–16; Gov't Resp. 18. The declaration is hearsay, and although the Court did not exclude it at the hearing, it is self-serving and disputed by Petitioner's sworn testimony before the Court. The Court therefore finds the declaration not credible and affords it little weight. Fed. R. Evid. 801, 807.

Respondent's conduct created a significant risk of, and in fact caused, an unjustified deprivation of Petitioner's liberty. The Due Process Clause protects Petitioner from this reckless abuse of authority and irresponsible discretion.[6] This factor weighs heavily in Petitioner's favor.

### C. Government Interests

The Court acknowledges that the Government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208–09; *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). However, the Government's legitimate interests would be best served by existing, well-established procedures incorporating an individualized determination by an IJ, based on evidence presented by the Government and the noncitizen, as to whether the noncitizen is dangerous or poses a risk of fleeing removal proceedings. By failing to adequately articulate individualized reasons why detaining Petitioner is necessary to enforce the immigration laws, Respondents beg the question "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore v. Kim*, 538 U.S. 510, 532–33 (2003) (Kennedy, J. concurring). Detention for

---

[5] It remains the case that race or apparent ethnicity, standing alone, cannot form the basis for an arrest. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 886–87 (1975).

[6] Respondents' conduct is this case is consistent with their escalating and often illegal practices in Oregon. *See, e.g.*, Maxine Bernstein, *ICE officers reveal arrest quotas, facial recognition use in Oregon dragnet*, Salem Rep. (Dec. 5, 2025), https://www.salemreporter.com/2025/12/05/ice-officers-reveal-arrest-quotas-facial-recognition-use-in-oregon-dragnet/, Holly Bartholomew & Troy Brynelson, *"Detain first and ask questions later": Oregon ICE arrests shot up in October*, OPB (Nov. 14, 2025), https://www.opb.org/article/2025/11/14/oregon-ice-arrests-shot-up-in-october-portland-detain-first-ask-questions-later/; Emily Cureton Cook, *Hillsboro man released after alleged wrongful detention by ICE*, OPB (Nov. 8, 2025), https://www.opb.org/article/2025/11/08/hillsboro-immigration-customs-enforcement-victor-cruz-ice-oregon-washington-county-democrats/.

any other reason is not a legitimate interest in this context. *See id.*; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025) ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."). Indeed, limiting the use of detention to only those noncitizens who are dangerous or pose a flight risk through existing procedures that Respondents overlooked in this case serves the Government's and public's interests by reducing the fiscal and administrative burdens attendant to immigration detention. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person."). The Government interests in Petitioner's detention are not significant under the circumstances.

### D. Weighing Factors

The *Mathews* factors favor Petitioner and support finding a Fifth Amendment violation arising from his arrest and continued detention. The appropriate remedy here is Petitioner's release. Whereas courts have ordered the Government provide a detained petitioner with a prompt bond hearing in the alternative to release,[7] this would be inadequate relief given the increasingly common circumstances exemplified by this case. First, Petitioner was detained for twelve days without any hearing before an IJ that he should already have had whether he requested it or not. Soraghan Decl. Ex. 2 at 3; *see Pinchi*, 792 F. Supp. 3d at 1035–36 (noting ongoing "inadequacy and unreliability" of DHS's asserted "post-detention procedural safeguards" in granting preliminary injuncting preventing re-detention of the petitioner without

---

[7] *E.g.*, *Gonzalez v. Noem*, 2025 WL 3552122, at *2 (D. Nev. Dec. 11, 2025) (ordering the respondents to provide the petitioner with a hearing under 1226(a) within seven days, or release the petitioner).

pre-deprivation hearing). This is far beyond the "outset" of Respondents' detention of Petitioner. *Jennings*, 583 U.S. at 306.

Moreover, given newly binding BIA precedent, there is little indication Petitioner would receive adequate process before an IJ. Regardless of what this Court holds in a particular case in the wake of an arrest and detention of an individual, ICE and DHS are operating according to an expansive but misguided understanding of their authority under the INA. *See J.Y.L.C.*, 2025 WL 3169865, at *2. As adopted in a precedential Bureau of Immigration Appeals (BIA) decision issued on September 5, 2025, Respondents now deny undocumented U.S. residents the opportunity for release on bond that previously would have been afforded to such residents under § 1226(a) by asserting § 1225(b)(2) imposes mandatory detention on all undocumented individuals during the pendency of removal proceedings. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) ("*Hurtado*"). Though its interpretation has been rejected by district courts, as discussed above, after *Hurtado*, IJs generally no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. *See id.* In fact, as of the date of this Order, at least one court has certified a nationwide class of "bond eligible"[8] noncitizens and granted declaratory relief to class members declaring they are being unlawfully detained without a bond hearing according to Respondents' interpretation of § 1225(b). *See Bautista v. Santacruz*, --- F.R.D. ----, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025); *Bautista v. Santacruz*, --- F. Supp. 3d ----, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025).

Here, ordering that Petitioner participate in, and that Respondents provide, a process that in this Court's view would be wholly inadequate is certainly not an adequate remedy. *See Rodriguez v. Bostock*, 2025 WL 2782499, at *2–4 (W.D. Wash. Sept. 30, 2025) (observing the Tacoma Immigration Court has adopted a policy of denying bond hearings for individuals

---

[8] Individuals whose detention may only be justified under § 1226(a). *See Bautista*, 2025 WL 3288403, at *8.

Page 12 — OPINION & ORDER

detained under § 1225 and holding "[Respondents'] practice of denying bond hearings [to individuals detained pursuant to § 1225] violates the INA"); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required"). There is no true countervailing interest under these circumstances; as discussed, Respondents have no legitimate interest in detaining individuals above and beyond what § 1226(a) allows. Respondents must release Petitioner.

## CONCLUSION

Respondents irresponsibly and unjustifiably arrested and detained Petitioner in violation of Petitioner's constitutional rights protected by the Due Process Clause of the Fifth Amendment. The proper remedy for Respondent's conduct is Petitioner's release. For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED. Petitioner was released at the Hearing on December 15, 2025.

IT IS SO ORDERED.

DATED this 22nd day of December 2025.

                                                        /s/ Michael McShane
                                                            Michael McShane
                                             United States District Judge